BARNARD *v.* JUDGE OF SUPERIOR COURT OF THE CITY
OF GRAND RAPIDS.

**1.** CRIMINAL LAW—COURTS—BOOKS AND DOCUMENTS—INSPECTION.
Where the prosecuting attorney held a number of books
and records of the city treasurer against whom a prose-
cution for embezzlement had been instituted, and refused
permission to the respondent to examine the books, which
had been turned over to the prosecutor by auditors after
making an examination, the judge of the court in which
the prosecution was pending had authority to require the
prosecutor to deposit them with the clerk of the court
for examination by accused or his counsel. The prosecut-
ing attorney had no greater rights than if he had secured
the books by unlawful search and seizure.

**2.** SAME—RECORDS—PUBLIC FILES, ETC.
Under proper restrictions the right to examine public books
and records remains in a member of the public although
charged with the crime of embezzlement.

**3.** COURTS—PRACTICE—JUDICATURE ACT—DISQUALIFICATION.
Act No. 314, Pub. Acts 1915, known as the judicature act
(3 Comp. Laws 1915, § 12254), in so far as it disqualifies
a judge for relationship, does not prohibit him from en-
tering interlocutory orders because his son and nephew
were acting as attorneys in related proceedings having
the same series of transactions involved in them.[1]

**4.** SAME.
Every litigant is entitled to nothing less than the cold
neutrality of an impartial judge, who must possess the
disinterestedness of a total stranger to the interests of
the parties involved in the litigation, whether that in-
terest is revealed by an inspection of the record or de-
veloped by evidence *aliunde* the record. The real parties
in interest furnish the reason for the judge to recuse
himself when it becomes known that they are related to
the judge, although they may not be parties *eo nomine.*

[1] As to effect of relationship to attorney in case, as disqualifying
judge to hear case, see note in 42 L. R. A. (N. S.) 1172.

Mandamus by Edward N. Barnard, prosecuting attorney for the county of Kent, against Major L. Dunham, judge of the superior court of the city of Grand Rapids, to compel respondent to vacate an order requiring relator to produce certain books or documents and to show cause why he should not be treated as disqualified to sit in the case of the People against Hawkins, then pending in said court. Submitted April 11, 1916. (Calendar No. 27,142.) Writ denied June 1, 1916.

*Edward N. Barnard, in pro. per.*

*Maynard & Chase (George Clapperton, of counsel),* for respondent.

STEERE, J. This is an application for mandamus to compel respondent to vacate an order previously made by him as judge of the superior court of Grand Rapids, requiring relator to deposit with the clerk of the court certain records and papers claimed to be material evidence in a criminal case there pending against James S. Hawkins, city treasurer, and to refrain from further acting as judge or presiding in said case because disqualified under the judicature act of 1915 (Pub. Acts 1915, No. 314, 3 Comp. Laws 1915, § 12254) by reason of relationship. Hawkins was bound over to respondent's court for trial on January 15, 1916, under a complaint charging him with embezzling and misappropriating $243.45 of money belonging to the city of Grand Rapids, stated in six different counts alleging such offense as committed under dates from June 8, 1914, to June 8, 1915. On January 25, 1916, prior to the filing of any information in said cause, application was made by Hawkins' counsel, supported by his affidavit, for an order, requiring relator and the firm of Patterson & Patterson, which had been

employed by the city, to audit the books and accounts of the city treasurer's office—

"to immediately deliver to the clerk of this court all books, papers, memoranda, and data which have been removed by them from the office of the city treasurer of the city of Grand Rapids, or from the office of the city comptroller of the city of Grand Rapids, to remain in the custody of the clerk of this court until the further order of the court, and that the respondent, his attorneys and agents, may have free access for the examination of the same, and that Edward N. Barnard, prosecuting attorney, George M. Patterson, and the firm of Patterson & Patterson may be directed and required to deliver to said respondent his personal bank checks, check stub books and bank passbooks which are or have been in the possession of any or either of them."

Relator filed his affidavit in opposition, stating, in substance, that all such documentary evidence came into his possession in the course of an investigation of alleged criminal practices in the city treasurer's office, and was held for use in pending criminal prosecutions against said Hawkins and his deputy. After a hearing held on January 31, 1916, the court refused to direct relator to deliver to Hawkins his personal bank checks, stub books, etc., but ordered him to produce and deliver to the clerk of the court the papers referred to in said motion, which came from the city treasurer's office, to remain for a period of 30 days, and until the further order of the court, open to inspection, both by the prosecution and defense in said case, and that relator return to the office of the city controller of the city of Grand Rapids all books, papers, etc., in his possession or under his custody and control, which had been taken or removed from that office. The record further discloses that two other criminal cases were pending in the superior court of Grand Rapids, charging Hawkins and his deputy, William

H. Olmstead, with misappropriation of funds belonging to the city treasury, one against Olmstead and one against Hawkins and Olmstead jointly, in both of which respondents were represented by the firm of Dunham & Dunham, attorneys, consisting of respondent's son and nephew. Claiming that the three cases involved substantially the same line of inquiry and were so correlated that disqualification in the other two cases was in fact and legal effect disqualification in the case under consideration, relator, in a subsequent motion to vacate said order, interposed the objection and urged as a reason that respondent was disqualified by consanguinity from acting in any of said cases. This objection was not sustained and relator's motion was overruled.

There are but two legal questions involved in this case: *First*, did the court have power to make an order requiring public records and private papers taken from public offices, including that of the city treasurer, against whom a criminal prosecution was pending, and which were held by the prosecution under claim that they were incriminating documentary evidence, to be turned over to the clerk of the court, where they might be inspected and examined by all parties in interest, and, if so, was said order an abuse of discretion under the circumstances shown? *Second*, was respondent disqualified from sitting in this case by reason of his son and nephew being attorneys of record in other cases of like nature pending before respondent, charging Hawkins and his deputy with like offenses, involving a similar line of inquiry and examination of the same books and records?

For the purposes of this case that portion of respondent's return to the order to show cause herein which is material and responsive must be taken as true, as also any averments of fact in relator's petition which are not denied in the return. From re-

spondent's return it appears that the auditing firm of Patterson & Patterson, while employed by the city to make an audit of the books of the city treasurer, upon which they were engaged for some months, were permitted by Hawkins, for the more convenient and efficient conduct of their work, to remove certain books, papers and memoranda from the treasurer's office to their office in the Grand Rapids National City Bank building where they were carrying on the work, but it is stated:

"Said city treasurer and said auditors are not in accord as to whether or not the auditors had permission to take from the city treasurer's office all the papers, books, documents, and data that were taken by said auditors."

The auditors did not return these book and papers, but subsequently turned them over to relator, and "some 2½ or 3 months" after they were removed from the treasurer's office complaint was made against Hawkins by an employee of the prosecutor, charging him with embezzling $243.45 from the city treasury. It was shown that said audit was begun shortly after August 25, 1915; that no report had been made by the auditors to the common council of the city, and that Hawkins' demand of the auditors and relator for return of all said books and papers had been refused. Under the circumstances shown respondent states that it appeared to him from the nature of the charge against Hawkins it was proper that he be given an opportunity to make investigation in the various books and records belonging to his office concerning the item he is charged with embezzling, and trace the entries, if able, in relation to it. Relator's contention is to the effect that the defendant in a criminal case is not entitled to the benefits of a bill of discovery; that communications made to the prosecuting attorney in a criminal case are privileged, and the prosecution can-

not be compelled to disclose in advance what evidence it has against an accused.

Conceding this all to be true, we fail to discover its application to the case at hand. The order complained of does not require relator to disclose any confidential communications, the theory of the prosecution, the kind and character of evidence he has against the accused, nor any particular item of incriminating evidence he may have discovered in these books and papers or elsewhere. When the records and papers were taken temporarily from the treasurer's office, either with or without his consent, for more convenient use by the auditors in their own office, the city treasurer was yet the legal custodian and entitled to the possession and use of them, while relator was not. In taking possession of them from the auditors he is in no different position than had he, without process, taken them from the treasurer's office by unlawful search and seizure. He, however, has taken and holds possession of them, his only claim of right to retain and sequester them being for use as evidence in a criminal case pending in respondent's court, thus planting his claim upon their relation to that case and bringing them under the control of the court, which has the inherent right to take cognizance of and pass upon questions involving an alleged unreasonable and unlawful exercise of authority in a case pending before it and under its general control. Authority is not wanting for a court in somewhat analogous cases to order papers wrongfully seized turned over to the accused. *Weeks* v. *United States*, 232 U. S. 383 (34 Sup. Ct. 341, L. R. A. 1915B, 834, Am. & Eng. Ann. Cas. 1915C, 1177). But in this case the court went no farther than to order these public records, and bank checks, stub books, passbooks, etc., of the accused claimed by him to relate to the conduct of his office, into the custody of the court to be cared for by its clerk subject to inspection by

interested parties. The right to examine public records for all reasonable purposes exists by statute, and might at proper times and under proper restrictions be exercised by any citizen, whether accused of crime or not, if these records were in the office of the city treasurer of Grand Rapids, where they ordinarily belonged. It was within the discretion of the court to make the order complained of, and under the circumstances shown we do not find that there was any abuse of discretion in making it.

Relator's contention that respondent is disqualified from acting officially in the case of *People* v. *Hawkins,* in which the interlocutory order complained of was made, is based upon that portion of section 7, chap. 4, of the judicature act of 1915 (3 Comp. Laws 1915, § 12254) which provides as follows:

"Nor shall any judge sit as a court in any cause in which he is related within the third degree of consanguinity to either of the attorneys or counselors of either party to said cause."

It is undisputed that no attorney of record, or who represented Hawkins in the case, is in any degree related to respondent, but it is conceded that the son and nephew of respondent are attorneys for Olmstead in the two cases of *People* v. *Olmstead* and *People* v. *Hawkins* and *Olmstead,* in the trial of which it is expected that they, or one of them, will participate as counsel for Olmstead. Manifestly, the law as it reads does not disqualify respondent from making an interlocutory order in *People* v. *Hawkins,* whose attorneys are in no way related to him. Relator contends, however, that this provision should be given a liberal construction to accomplish its evident intent; that all three cases involve embezzlement by the defendants from the city treasury, with which they were officially connected; asserts that the books and documents which the order permits them to inspect are material to a

greater or less extent in all the cases, and therefore the order inures to the direct benefit of interests represented by respondent's son and nephew as well as those of Hawkins.  As to this respondent returns:

"That the proof that the people must produce against the said James S. Hawkins in the case of the *People* v. *James S. Hawkins* is for a different sum of money taken at a different date, and that the same proof is not the proof that would be required by the people to secure a conviction against the said Willard H. Olmstead in the case of the *People* v. *Willard H. Olmstead*, and in the case of the *People* v. *James S. Hawkins* and *Willard H. Olmstead*, charged jointly.".

From his return and the material facts established by this record we cannot find that the respondent was disqualified by statute from making the interlocutory order complained of, or that the same is void for want of jurisdiction.  Neither can we assume to divine what facts may be developed in the progress of the case and prejudge, as relator petitions, the legality and propriety of respondent presiding upon the trial.

In view, however, of the adverse reflections and arguments appearing in respondent's return upon the wisdom, propriety, and constitutionality of this law and strictures upon those who invoke it, we are constrained to state we do not find said section 7 of the judicature act out of harmony with the generally recognized public policy which demands of the judiciary strict impartiality in administrating the affairs of our courts, often declared both in statute and bench law, and well stated in *Yazoo, etc., R. Co.* v. *Kirk*, 102 Miss. 41 (58 South. 710, 834, 42 L. R. A. [N. S.] 1172, Am. & Eng. Ann. Cas. 1914C, 968), as follows:

"Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the

record or developed by evidence *aliunde* the record. The real parties in interest furnish the reason for the judge to recuse himself when it becomes known that they are related to the judge, although they may not be parties *eo nomine*."

Upon the record before us the writ of mandamus as prayed for must be denied.

Stone, C. J., and Kuhn, Ostrander, Bird, Moore, Brooke, and Person, JJ., concurred.